IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 614, AFL-CIO : : : : v. : : PECO ENERGY COMPANY : | CIVIL ACTON NO. |

## COMPLAINT

Introduction

      This is an action by International Brotherhood of Electrical Workers Local 614, AFL-CIO ("Local 614" or "the Union) to vacate a Labor Arbitration Award under Section 301 of the Labor Management Relations Act, "LMRA," 29 U.S.C. § 185, and Section 10 of the Federal Arbitration Act, "FAA," 9 U.S.C. § 10(a). Because the Labor Arbitrator both considered and gave decisive weight to issues which the Defendant, PECO Energy Company ("PECO" or "the Employer") was contractually barred from raising by the express language of the Collective Bargaining Agreement ("CBA") between it and Local 614, the Arbitrator exceeded her authority under the Agreement, and pursuant to the FAA, her Award must be vacated.

The Parties

1. Plaintiff Local 614 is an unincorporated labor organization under the LMRA, with a business address of 4613 West Chester Pike, Upper Level, Newtown Square, Pennsylvania 19073. Local 614 represents, *inter alia*, a bargaining unit of employees of Defendant PECO, engaged in electrical distribution and maintenance work.

2. Defendant PECO is an employer under the LMRA, with a business address of 2301 Market Street, S23-1, Philadelphia, Pennsylvania 19103.

Jurisdiction and Venue

3. This Court has jurisdiction pursuant to Section 301 of the LMRA, 29 U.S.C. § 185(a), Section 10 of the FAA, 10 U.S.C. § 10 (a), and 28 U.S.C. § 1331.

4. Venue is appropriate under 28 U.S.C. § 1391(b) (1) and (2).

Facts

5. At all times material to this controversy, Local 614 and PECO have been parties to a CBA, setting forth the terms and conditions of labor for employees who are members of the bargaining unit. (A copy of the CBA is attached hereto as Exhibit "A").

6. Article 4.12 of the CBA provides that if an employee is requested to report to work in the 8 hour period immediately preceding the beginning of his normally scheduled shift, and required by their supervisor to remain on the job for the hours of his regular schedule, such hours worked "will be paid for at the applicable overtime rate." (Exhibit "A," at Article IV, pp. 27-28).

7. Local 614 and PECO also bargained in the CBA for a comprehensive "Grievance Procedure" to "establish procedures for the processing and settlement of complaints" and "disputes between the Company and the Union ... as to the interpretation, application, or compliance with" the CBA. (*Id.*, at Article X, p. 81).

8. At each step of the procedure, the parties mutually pledge to "materially expedite the solution to the grievance," by Local 614 "disclosing to the Company representatives a full and

2

detailed statement of the facts relied upon," and by PECO "disclos[ing] all the pertinent facts relied upon by the Company." (*Id.,* at p. 87).

9. If the parties are unable to resolve the dispute in the first three steps of the Grievance Procedure, the CBA provides for a fourth "arbitration" step, at which an impartial Arbitrator is appointed under the rules of the American Arbitration Association ("AAA") to hear and adjudicate the controversy. (*Id.,* at pp. 85-86).

10. The CBA expressly states that "[n]o new issues may be raised in the arbitration step, which were not previously raised in the first three steps of the procedure, except issues involving timeliness or arbitral jurisdiction." (*Id.,* at p. 86).

11. The Arbitrator's authority is limited by the CBA; she "shall have no authority to render an award that amends, alters, or modifies any provision" of the Agreement. (*Id.*).

12. The CBA provides further that after presentation by both sides, the Arbitrator will render a "written award" which "shall be final and binding upon all parties, *provided it does not exceed the authority of the arbitrator.*" (*Id.,* at pp. 85-86) (Emphasis added).

13. On April 22, 2016, employee Bruce Champagne ("Champagne" or "the Grievant") was asked by his supervisor, Luis Maldonado, to report to work four (4) hours before the start of his normal shift on April 28th, and eight (8) in advance of his normal shift on April 29th, to perform "guaranteed switching," a job that entailed shutting down or isolating electrical power to equipment within a facility so that construction or maintenance work could be performed safely. (See Award of Arbitrator Kathleen Spilker, hereafter referred to as "Spilker Award," at 4, attached hereto as "Exhibit "B").

14. On both April 28th and April 29th, Champagne was required by supervisor Maldonado to remain on the job through the hours of his regular shift; consequently, he requested overtime pay for these hours pursuant to Article 4.12 of the CBA. Spilker Award, at 5.

15. Maldando, however, denied this request, and paid the Grievant only straight time for the hours. *Id.*

16. Through his Local 614 Business Representative, Brendan Clemmer, Champagne filed a grievance, which was answered by Maldando at Step One. In his answer, Maldando denied the grievance solely on the ground that the Grievant had been notified "in advance" of the need to come in ahead of his shift on April 28th and 29th; he later specifically stated that this was the only reason he denied Champagne overtime pay for the hours he was required to work his normal shift: "the type of work he was called to do [*i.e.* guaranteed switching]" did not "matter." (See Transcript of Arbitration Hearing, Volume II, attached hereto as Exhibit "C," at 65-66).

17. The Grievance was then referred to Steps Two and Three. At both Steps, the only argument made by PECO representatives to justify the Company's denial of overtime pay for Champagne's normal work hours was that he had been "notified and scheduled in advance, not because of the nature of the work [*i.e.*, guaranteed switching]" he was tasked to do. Spilker Award, at 8-9. Business Representative Clemmer later testified that no PECO Representative at any of these Steps raised that or any other issue apart from the "advance notice" issue as a basis for why it believed the Grievance was without merit. (See Transcript of Arbitration Hearing, Volume I, attached hereto as Exhibit "D," at 121; 122).

18. Local 614 advanced the Grievance to arbitration pursuant to Step Four of the CBA's Grievance Procedure, and the parties appointed Kathleen Spilker to serve as Arbitrator.

19. Arbitrator Spilker held hearings and took sworn evidence from both Local 614 and PECO witnesses, and accepted documentary evidence.

20. At the Arbitration hearings, Local 614 asserted, *inter alia*, that an established practice existed under Article 4.12, of employees being paid overtime for working their regular shift after being summoned to work during the preceding shift "regardless of whether they were notified in advance and regardless of the type of work they were asked to perform." Spilker Award, at 13.

21. To support this argument, Local 614 presented testimony and timesheets from four (4) of Champagne's fellow workers who, Spilker later stated, "gave credible testimony regarding the asserted practice." Spilker Award, at 13.

22. However, for the first time in the Grievance Procedure, PECO asserted that Champagne was denied overtime pay for his normal work hours because he had been called in to perform guaranteed switching, and the Company presented time sheets of other employees who had done such work and had only received straight time pay for when they were called in ahead of their normal work hours. Spilker Award, at 14.

23. Additionally, for the first time in the Grievance Procedure, PECO argued that the Grievant was not eligible for overtime for his normal work hours because he had "volunteered" to come in to work in advance of his regular schedule on April 28th and April 29th.

24. At the conclusion of the hearings, each party submitted written briefs.

25. In Local 614's brief, the Union noted it was undisputed that PECO had never argued the "guaranteed switching" issue prior to the arbitration step; nor had it previously argued at either Steps 1, 2 or 3 that Champagne was not eligible for overtime pay for his normal work hours because he had "volunteered" to come in ahead of these hours on April 28th and April

5

29th. (See Post-Hearing Brief on behalf of Local 614, at 13-16; 30, attached hereto as Exhibit "E").

26. In PECO's brief, the Employer argued that Champagne was not entitled to overtime because he "accepted a voluntary, scheduled overtime opportunity," offered in advance, to perform "guaranteed switching." (See Post-Hearing Brief on behalf of PECO, at 7; 8; 11; 20-21; 22-23, attached hereto as Exhibit "F"). It did not dispute, or even address, the fact that it had raised neither issue in the first three steps of the Grievance Procedure.

27. On May 3, 2018, Arbitrator Spilker issued her Opinion and Award.

28. In her Opinion and Award, she noted that one of the relevant portions of the CBA was Article X, Step 4, which provided, *inter alia*, that "No new issues may be raised in the arbitration step, which were not previously raised in the first three steps of the procedure, except issues involving timeliness or arbitral jurisdiction." Spilker Award, at 3.

29. Arbitrator Spilker also noted that, while PECO had argued that the Grievant was not entitled to premium pay because he had "volunteered for guaranteed switching," Local 614 "emphasize[d] that this argument was never raised in the earlier steps of the grievance procedure, and it is thus excluded from consideration under the terms of Article X, Step 4 of the Agreement." Spilker Award, at 8.

30. Notwithstanding the fact that Arbitrator Spilker correctly identified Article X, Step 4 of the CBA as a relevant contractual provision, and notwithstanding the fact that she acknowledged the Union's claim that the Company's "guaranteed switching" and "voluntary report" issues were never raised in the previous steps of the Grievance Procedure, and should thus be barred from consideration by her at the arbitration step, she proceeded, in the Decision portion of

6

her Award, to deny the Grievance precisely on the grounds that the work in question was "guaranteed switching" for which the Grievant had "volunteered" to perform.

31. Specifically, she held that Champagne was not entitled to premium pay under Article 4.12 of the CBA because "[t]here was no immediate need to perform the guaranteed switching work such as would usually be the case if an employee were called out to respond to an event requiring increased staffing." Spilker Award, at 13.

32. "In addition," she noted further, "the Grievant's acceptance of guaranteed switching work was completely voluntary." *Id.*

33. With regard to the Union's presentation of past practice evidence, she admitted that Local 614 witnesses "gave credible testimony regarding the asserted practice" of being paid premium pay when they were asked to report to work in advance of their regular shift; "however," she continued, "none of the witnesses testified that he had been paid for work ... in conjunction with guaranteed switching." *Id.*, at 13-14. "By contrast," she continued, "the time sheets submitted by the Company showed that employees who worked overtime performing scheduled guaranteed switching were not paid for their regular scheduled shift." *Id.*, at 14.

34. The Arbitrator failed to apply, or even to discuss, Article X, Step 4 of the CBA, which by its express terms precluded her from considering the "guaranteed switching" and "voluntary report" issues raised by PECO for the first time at arbitration.

COUNT ONE

35. Local 614 incorporates and realleges Paragraphs 1 to 34 of the Complaint as if fully set forth therein.

7

36. Under the Federal Arbitration Act, 9 U.S.C. § 10(4), an award of a labor arbitrator may be vacated if "the arbitrator exceeded h[er] powers" under the terms of the applicable CBA.

37. Under § 10(3) of the FAA, an award of a labor arbitrator may likewise be vacated if she engages in "any . . . misbehavior by which the rights of any party have been prejudiced."

38. Further, while reviewing Courts generally give great deference to a labor arbitrator's award, a district court may vacate the award if there is evidence that the arbitrator's decision was based on a manifest disregard of terms of the CBA.

39. The arbitrator's award must "derive its essence from the CBA," and if an arbitrator ignores "the parameters of her inquiry as defined in the CBA," the Award should be vacated.

40. The CBA between Local 614 and PECO states that "[a]t all steps in the grievance procedure ... Company representatives should disclose all the pertinent facts relied upon by the Company."

41. Moreover, Article X, Step 4 of the CBA between Local 614 and PECO expressly provides that no issue may be raised in arbitration that was not previously raised in the prior three steps of the parties' bargained-for Grievance Procedure.

42. It is undisputed that PECO did not raise the issue of the *type* of work the Grievant was called out to perform (*i.e.* "guaranteed switching") or the voluntary nature of the call out at any time prior to the arbitration step of the CBA.

43. The CBA provides that an Arbitrator's Award is not "final and binding" if it "exceeds the authority of the Arbitrator."

44. The CBA provides further that the Arbitrator "shall have no authority to render an award that amends, alters, or modifies any provision of this Agreement."

45. Arbitrator Spilker was without authority to even consider, much less rely upon, the fact that the Grievant was called out for "guaranteed switching" and that he "volunteered" for this work, as a basis for denying the Union's grievance.

46. The Arbitrator therefore issued an Award that "exceeded her authority" under the CBA, and one that worked to amend, modify, or alter the express terms of Article X, Step 4.

47. The Arbitrator's manifest disregard of the express terms of Article X, Step 4 of the CBA prejudiced the rights of Local 614.

WHEREFORE, IBEW Local 614 hereby requests that the Award of Arbitrator Spilker be Vacated, and that the matter be returned to Arbitration before a new Arbitrator. Alternatively, IBEW Local 614 requests that the matter be remanded to Arbitrator Spilker with instructions that she comply with the limits on her authority that are expressly set forth in Article X, Step 4 of the CBA.

SPEAR WILDERMAN, P.C.

BY: _____
**CHARLES T. JOYCE**
**I.D. #51254**
**Attorney for Plaintiff IBEW Local 614**
**230 S. Broad Street, Suite 1400**
**Philadelphia, Pennsylvania 19102**
**(215) 732-0101**
**(215) 732-7790 (Fax)**

**Dated: May 31, 2018**